UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ROBERT M. McCAFFERY, | ) | |
| | ) | Civil Action No. 05-40146-RWZ |
| Pro se Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID L. WINN, | ) | |
| | ) | |
| Respondent. | ) | |

**RESPONSE TO PETITION FOR HABEAS CORPUS AND
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

The pro se Petitioner Robert M. McCaffery, an inmate at the Federal Medical

Center at Devens, Massachusetts ("FMC Devens"), has filed a petition for a writ of

habeas corpus ("Petition"), pursuant to 28 U.S.C. § 2241, seeking release to home

confinement due to exceptional medical circumstances and an alleged failure of the

Federal Bureau of Prisons ("BOP") to provide adequate medical care.  As explained

below, Petitioner's motion suffers from numerous procedural and substantive defects,

and should be dismissed.

**BACKGROUND**

On November 24, 2004, the Petitioner pled guilty in the United States District

Court for the Eastern District of Pennsylvania to one count of bankruptcy fraud in

violation of 18 U.S.C. § 157(3).  See Exhibit 1, Criminal Docket for USA v. Robert

McCaffery, United States District Court, Eastern District of Pennsylvania, Case #: 2:04-

cr-00698-PD-ALL.  In a Sentencing Memorandum filed with the district court on May 16,

2005 (Exhibit 2), he sought leniency based in part on his various medical conditions and

need for medications.  Specifically, his Sentencing Memorandum stated:

> Mr. McCaffery began suffering from what was eventually
> diagnosed as chronic pancreatis, in 1980.  During this entire
> time, he continued to work but also during this time period,
> his financial circumstances began to deteriorate as set forth
> in the Pre-Sentence report.  He received numerous medical
> treatments through the 1980's and 1990's eventually being a
> regular user of Percocet for the pain relief for what was
> originally believed to be a gallbladder disease.  After two
> decades of medical treatment in 2003, his body in essence
> began to shut down where he was no longer able to digest
> food.  He suffered malnutrition, diarrhea, albuminuria and
> even hallucinations. He eventually received a pancreatic
> transplant, a pancreatic bypass and a spinal cord stimulator
> implant for pain. He also has and continues to suffer from
> diabetes.  He is presently taking medications of Neurontin,
> Lasix, Humalog, Percocet (three or four per day), Effexor,
> Nexxium, Pancreasan Bentyl.

On May 17, 2005, the district court sentenced Petitioner to a term of imprisonment of 15

months, with three years of supervised release.  The Petitioner filed a notice of appeal,

but subsequently withdrew the appeal.  See Exhibit 1, Docket Nos. 21, 23, 24, 27, 28.

The Petitioner arrived at FMC Devens on Jun 21, 2005.  Exhibit 3, Declaration of

FMC Devens Paralegal Specialist Stephanie Scannell ("Scannell Dec."), Document 1a

attached thereto.   Assuming Petitioner receives all Good Conduct time available to him

under 18 U.S.C. § 3624(b), his projected statutory release date on this sentence is July

22, 2006.  In the event that all of his Good Conduct Time is disallowed, his full term

expiration date is September 19, 2006.  Id.

Petitioner arrived at FMC Devens with a history of pancreatitis, diabetes,

arthritis, and depression.  He had undergone a pancreatic bypass in 1980 and a

pancreatic autotransplant in 1982.  Exhibit 4, Declaration of Sandra Howard, Clinical

Director, FMC Devens ("Howard Dec.") at ¶ 4.  As set forth in detail in the Declaration

of Dr. Howard, the Petitioner has been seen by staff physicians, mid-level practitioners,

staff nurses, psychology staff, psychiatry staff, and dental staff.  Id. ¶¶ 4-18.  He is

receiving a multiple level approach to pain therapy using percocet, morphine, and

Tylenol for his chronic pain.  Id. ¶ 19.  He is also being monitored daily for his diabetes

with adjustments as clinically indicated.  Id.  Petitioner is currently in stable condition,

and he will continue to be followed by FMC Devens medical staff in order to

periodically adjust his medications according to clinical indications.  Id.

According to Bureau of Prisons records, Petitioner has not filed any requests for

an administrative remedy at any time during his incarceration.  Scannell Dec. (Exhibit 3),

Document 1b, Administrative Remedy Generalized Retrieval for inmate Robert

McCaffrey, Reg. No. 57977-066.

Petitioner's habeas petition consists of a Form To Be Used By Federal Prisoners

For Filing a Petition For Writ of Habeas Corpus Under Title 28 U.S.C. § 2241.  The

substance of his position is set forth in paragraphs 15 and 16 of his Petition as follows:

> 15c.    STATEMENT OF CLAIM: . . .
>          I am a 55 year old male who has undergone approx. 15
> procedures including a pancrease bypass in 1980 and a
> pancrease transplant in 1982.  My spleen and gallbladder
> have also been removed.  I suffer from chronic pancreatitis
> with calcifications and am a brittle diabetic which has caused
> me to lose all feeling in feet, a neuropothy in both feet and
> legs, the lose of my teeth and malnutrition.  Devens refused
> and continue to refuse drugs and their administration of
> same which were used successfully before my incarceration.
> Devens has denied me a level of care needed on a daily
> basis while making me endure a constant level of pain.
>
> 16.     RELIEF: . . .
>          I want the court to allow me to continue my sentence
> under house confinement.  I accept my guilt and sentence.  I
> was wrong in commiting my crime.  I want however to be
> able to continue my life after my sentence is complete.  I
> need to be able to have access to the doctors who have
> cared for me and take my twelve daily medications under
> their supervision.  For my health and my family's health.  My
> crime is bankruptcy fraud not being sick.  Without proper &
> necessary medical care I am subject to severe pain on the
> order of pancrease cancer.  I need the proper medications
> and administration of them.

Petition at 5-6 (spellings and grammar as in original).  The Petition does not allege that

Petitioner's medical condition has changed significantly from the time he was

sentenced three months ago.

-4-

**ARGUMENT**

A.      **Petitioner's Request For Release to Home Confinement
        Because of Extraordinary Medical Conditions Must Be
        Dismissed**

1.      **Petitioner's Claim Should Be Dismissed Because He Failed To
        Exhaust His Administrative Remedies**

The Petitioner admits that he has not pursued his administrative remedies.

Petition at ¶ 15.a.  Prisoners are ordinarily required to exhaust the administrative

remedies set forth in the Bureau of Prison's grievance procedure regulations, 28 C.F.R.

§§ 542.10-16, prior to filing a habeas petition under 28 U.S.C. § 2241 or other action

against the Bureau.  Rogers v. United States, 180 F.3d 349, 357-58 (1st Cir. 1999) ("Once

the administrative remedies under the Bureau of Prison's Administrative Remedies

Program are exhausted . . . prisoners may then seek judicial review of the request for

designation by filing a habeas petition under 28 U.S.C. § 2241."); see Moscato v.

Federal Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996) (failure to pursue

administrative remedies barred judicial review of loss of inmate's good time credits);

Gonzalez v. Perrill, 919 F.2d 1 (2d Cir. 1990) ("It is well settled that an appellant must

exhaust his administrative remedies before seeking habeas corpus relief in the federal

courts"); United States v. Flanagan, 868 F.2d 1544, 1545 (11th Cir. 1989) (shortening of

sentence is in the first instance an administrative, not a judicial function); Soyka v.

Alldredge, 481 F.2d 303, 306 (3rd Cir. 1973) (premature to seek credit toward reducing

sentence until inmate has undertaken BOP review procedures); <u>see</u> <u>also</u>, <u>Sayyah v.</u>

<u>Farquharson</u>, 382 F.3d 20, 24 (1st Cir. 2004) (discussing common law exhaustion doctrine,

which "almost universally" premises judicial review upon the prior exhaustion of

administrative remedies).  District courts in this district and elsewhere have required

exhaustion before a prisoner can pursue habeas relief premised on medical care issues.

<u>See</u> <u>Cardona v. Winn</u>, 170 F.Supp.2d 131, 131-32 (D. Mass. 2001) (dismissing § 2241

petition in which an inmate sought a furlough from prison to receive a kidney

transplant, for failure to exhaust administrative remedies under 28 C.F.R. §§ 542.10-16);

<u>Quinn v. Menifee</u>, No. 99-CIV-3621 (JGK), 2000 WL 680360, ** 2-3 (S.D. N.Y. 2000)

(dismissing § 2241 petition, in which an inmate sought a transfer of his custody to a

state corrections department so that he could receive a kidney transplant, for failure to

exhaust administrative remedies under 28 C.F.R. §§ 542.10-16).

The BOP administrative remedy procedure is set out at 28 C.F.R. §542.10, *et seq.*,

and provides formal review of any complaint which relates to any aspect of the inmate's

confinement.  Under this process, inmates are encouraged to first attempt resolution of

their complaints informally by discussing the matter with BOP staff.  <u>See</u> 28 C.F.R.

§ 542.13.  If the matter is not able to be resolved through informal resolution, or if the

inmate chooses to forego informal resolution, the inmate may file a formal complaint

with the Warden of the facility.  <u>Id</u>. §542.14(a).  If the inmate is not satisfied with the

Warden's response, the inmate may file an appeal with the Regional Director. Id. §

542.15(a). Finally, if the inmate is dissatisfied with the Regional Director's response, the

inmate may appeal that decision to the General Counsel of the BOP. Id. 542.15(a).

The requirement that inmates exhaust their administrative remedies prior to

seeking judicial relief serves three purposes: (1) allowing the appropriate agency to

develop a factual record and apply its expertise facilitates judicial review; (2) permitting

agencies to grant the relief requested conserves judicial resources; and (3) providing

agencies the opportunity to correct their own errors fosters administrative autonomy.

See Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761-62 (3d Cir. 1996). Because

the Petitioner failed to pursue the available BOP administrative remedies prior to

seeking relief in this Court, his Petition should be dismissed.

> **2.     Only the Bureau of Prisons Has Authority To Designate That
> Petitioner Serve His Sentence In Home Confinement**

Even if Petitioner's failure to exhaust were disregarded, this Court lacks authority

to entertain his request that he be placed in home confinement. To the extent Petitioner

is seeking a modification of his sentence, only the sentencing court–here the United

States District Court For the Eastern District of Pennsylvania–has authority to modify

his sentence. 18 U.S.C. § 3582(c); cf. United States v. Barrett, 178 F.3d 34, 50 n. 10 (1st

Cir. 1999) (a motion under section 2255 must be brought in the sentencing court). Furthermore,

the governing statute, 18 U.S.C. § 3582(c), provides that the sentencing court may

modify a sentence in three limited circumstances: (1) on motion of the BOP[1]; (2) when

the sentence was based on a guideline range that has since been lowered; and (3) when

the court is so authorized by Fed. R. Crim. P. 35.  None of these circumstances is

present in this case.

 Absent statutory authority, a district court lacks authority to modify a sentence.

United States v. Ross, 245 F.3d 577, 586 (6th Cir. 2001) (district court lacks jurisdiction

to reconsider and impose a modified term of imprisonment absent express authority);

United States v. Mendoza, 118 F. 3d 707, 709 (10th Cir. 1997) ("A district court does not

have inherent authority to modify a previously imposed sentence"); United States v.

Blackwell, 81 F.3d 945 (10th Cir. 1996) (modification of sentence authorized "only in

specific instances where Congress has expressly granted the court jurisdiction to do

so"); United States v. Caterino, 29 F.3d 1390, 1394 (9th Cir. 1994) (authority to change a

sentence derives exclusively from federal statutory authority).  Consequently, this

Court lacks authority to entertain Petitioner's request that he be placed in home

confinement.  See United States v. Clark, 8 F.Supp.2d 560, 560-62 (W.D. Va. 1998) (court

---

[1] The determination of the Bureau of Prisons not to move for a reduction is conclusive.  United States v. Smartt, 129 F.3d 539, 541 (10th Cir. 1997); Fernandez v. United States, 941 F.2d 1488, 1492 (11th Cir. 1991); Simmons v. Christensen, 894 F.2d 1041, 1043 (9th Cir. 1990);Turner v. United States Parole Comm'n, 810 F.2d 612, 618 (7th Cir. 1987); United States v. Myers, 375 F.Supp.2d 1293 (D.N.M. 2005); see United States v. Johnigan, 2002 WL 31928438 (D. Kan. 2002) (petitioner ineligible for special circumstances reduction based on medical condition because BOP made no motion in the case).

lacked jurisdiction to modify defendant's sentence and place him in home confinement due to his extremely poor health because none of factors identified in § 3582(c) were applicable); Caldwell v. United States, 992 F. Supp. 363, 365-66 (S.D. N.Y. 1998) (court lacked jurisdiction to modify defendant's sentence and place him in home confinement after defendant was diagnosed with leukemia because none of factors identified in § 3582(c) were applicable).

Petitioner is not entitled to collateral relief pursuant to 28 U.S.C. § 2241. Section 2241 provides that a writ of habeas corpus may be granted to a prisoner, inter alia, "in custody in violation of the Constitution or laws or treaties of the United States." Id. § 2241(c)(3). Petitioner does not claim that he is unlawfully in BOP custody. Nor does he claim the right to be released from that custody. Likewise, he does not contend that his sentence was imposed in violation of federal law or the Constitution, that the court lacked jurisdiction to impose the sentence, or that his sentence exceeds the maximum authorized by law. And, finally, he does not argue – nor could he – that BOP lacks the authority to chose the facility in which he will serve his term of imprisonment. See 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment."); see also, e.g., Thye v. United States, 109 F.3d 127, 130 (2d. Cir. 1997) ("Decisions to place a convicted defendant within a particular treatment program or a particular facility are decisions within the sole discretion of the Bureau of Prisons.");

United States v. Bakeas, 987 F. Supp. 44, 49 n.7 (D. Mass. 1997) ("Whether a sentencing court can consider the conditions of confinement in imposing sentence, and shape the sentence accordingly, is a different issue from whether it can direct the Bureau of Prisons where to carry out the sentence. The former involves the proper exercise of judicial discretion, the latter would involve judicial encroachment on executive decision."); cf. McKune v. Lile, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise.").

The Court should reject Petitioner's request that the Court issue an order directing that he serve the remainder of his sentence in home confinement. Even assuming BOP has the discretion to place Petitioner in home confinement at any time, that discretion would not establish that his placement in a federal prison facility is "in violation of the Constitution or laws or treaties of the United States," as required for collateral relief. 28 U.S.C. § 2441(c)(3); see also 28 U.S.C. § 2255. In Petitioner's case, the sentencing court sentenced him to a term of imprisonment, and his subjective expectation that he should be released to home confinement in order to be treated and monitored by doctors of his choosing simply does not entitle him to collateral relief under Section 2241 or Section 2255.

A liberty interest in a prisoner may arise either under the Due Process Clause of the Constitution itself or it may arise from certain statutes or regulations. In Sandin v.

Connor, 515 U.S. 472 (1995), the Supreme Court explained that in the prison context a liberty interest protected by the Due Process clause arises only when the prison restriction at issue imposes a hardship that is "atypical and significant . . . in relation to the ordinary incidents of prison life." 515 U.S. at 484. In the instant case, Petitioner has failed to establish how the failure to place him in home confinement has or will cause him to suffer any atypical and significant hardship over and above the ordinary incidents of prison life.

Moreover, there is no right in the Constitution for an inmate to be assigned to a particular institution or program. Olim v. Wakinekona, 461 U.S. 238 (1983); Meachum v. Fano, 427 U.S. 215 (1976); Young v. Quinlan, 960 F.2d 351, 358 n. 16 (3d Cir. 1992); Pugliese v. Nelson, 617 F.2d 916 (2d Cir. 1980); Lott v. Arroyo, 785 F. Supp. 508 (E.D. Pa. 1991) (Constitution does not confer on state inmate right to participate in pre-release program). In Moody v. Daggett, 429 U.S. 78 (1976), the Supreme Court addressed a challenge to the impact of a detainer on prison programming. The Court noted:

> We have rejected the notion that every state action carrying
> adverse consequences for prison inmates automatically
> activates a due process right. In Meachum v. Fano, 417 U.S.
> 215 (1976), for example, no due process protections were
> required upon the discretionary transfer of state prisoners to
> a substantially less agreeable prison, even where that
> transfer visited a "grievous loss" upon the inmate. The
> same is true of prisoner classification and eligibility of
> rehabilitative programs in the federal system. Congress has
> given federal prison officials full discretion to control these

-11-

conditions of confinement, 18 U.S.C. § 4081, and petitioner
has no legitimate statutory or constitutional entitlement
sufficient to invoke due process.

429 U.S. at 88 n.9.  In Pugliese v. Nelson, 617 F.2d 916, 923-925 (2d Cir. 1980), the Second

Circuit examined the statutes then in effect governing institutional placement and

community programs, 18 U.S.C. §§ 4081 and 4082, and found those statutes vested

"complete and absolute discretion with respect to the incarceration, classification, and

segregation of lawfully convicted prisoners" in the Attorney General.   617 F.2d at 923.

The authority of the Attorney General under these statutes has been delegated to the

Federal Bureau of Prisons.  28 C.F.R. § 0.96.[2]

To be sure, 18 U.S.C. § 3524(c) authorizes the BOP to place a prisoner in home

confinement so as to "afford the prisoner a reasonable opportunity to adjust to and

prepare for the prisoner's re-entry into the community."  Pursuant to this statute, an

inmate like Petitioner, serving a term of incarceration of fifteen months, may be released

to a halfway house or home confinement to serve out the remaining 10 percent of his

sentence, not to exceed 6 months.  The language in the statute grants only 10 percent

pre-release placement.  When a term of incarceration is only fifteen months, the

recommendation for pre-release placement would be for approximately 10% of that term,

---

[2]  In United States v. Cintron-Fernandez, 356 F.3d 340, 347 n.7 (1st Cir. 2004), the
First Circuit expressly reserved the question whether home confinement could ever
qualify as a "penal or correctional" facility which the BOP may designate as a "place of
imprisonment" under § 3621(b).

which is about six weeks prior to the projected release date. The record indicates that

Petitioner's pre-release preparation date (or 10% date) is June 14, 2006, and his

projected release date is July 22, 2006. See Scannell Decl., Document 1a.

The placement of an inmate in a halfway house is an outgrowth of the BOP's

broad discretion to determe the location of incarceration. United States v. Jalili, 925

F.2d 889 (6th Cir. 1991). The BOP is vested with broad discretion in deciding whether a

prisoner is to be assigned to a community program. See Fernandez-Collado v. INS, 644

F. Supp. 741 (D. Conn. 1986), aff'd, 857 F.2d 1461 (2d Cir. 1987); cf. Paulino v. Connery,

766 F. Supp. 209 (S.D. N.Y. 1991). The First Circuit has recently described 18 U.S.C. §

3524(c) as "reflect[ing] Congress's intent to impose upon the agency a duty to prepare

prisoners for reentry into the community, without tying the hands of administrators in

deciding where prisoners are to be placed." Goldings v. Winn, 383 F.3d 17, 23 (1st Cir.

2004) (emphasis added). Accordingly, this Court lacks authority to specify the location

where Petitioner shall serve the remainder of his sentence.

**B.** **This Court Lacks Jurisdiction To Grant Relief With Regard to Any Claim For Injunctive Relief To Remedy Alleged Inadequate Medical Care**

**1.** **A Claim of Inadequate Medical Treatment While in Custody Is Not the Proper Subject of a Habeas Petition**

The writ of habeas corpus is not a proper vehicle for seeking injunctive relief to

remedy alleged inadequacy of medical care by prison authorities. "It is a well-settled

-13-

general principle that a habeas petition is the appropriate means challenging the 'actual fact or duration' of one's confinement, whereas a civil rights claim is the proper means to challenge the 'conditions of one's confinement.'" Kamara v. Farquharson, 2 F.Supp.2d 81, 89 (D. Mass. 1998).  As the Supreme Court recently explained, "where an inmate seeks injunctive relief challenging the fact of his conviction or the duration of his sentence," such a claim "fall[s] within the 'core' of habeas corpus and thus [is] not cognizable when brought pursuant to [42 U.S.C.] § 1983.  By contrast, constitutional claims that merely challenge the conditions of a prisoner's confinement, whether the inmate seeks monetary or injunctive relief, fall outside of that core and may be brought pursuant to § 1983 in the first instance." Nelson v. Campbell, 541 U.S. 637, 643 (2004) (internal citations omitted).  In Fay v. Noia, 372 U.S. 391, 430-31 (1963), the Court observed that habeas exists "to enforce the right of personal liberty; when that right is denied and a person confined, the federal court has the power to release him.  Indeed, it has no other power; . . . it can act only on the body of the petitioner."  (Emphasis added.)  See Allen v. McCurry, 449 U.S. 90, 98 n.12 (1980) (the "unique purpose of habeas corpus" is "to release the applicant for the writ from unlawful confinement").

Hence, "[f]or most conditions of confinement claims, . . . and particularly for those involving inadequate medical treatment, courts usually hold that habeas relief is not available." Kane v. Winn, 319 F.Supp.2d 162, 215 (D. Mass. 2004) (citing cases).

-14-

That is so because "'if [the petitioner is seeking] a different program or location or environment, then he is challenging the conditions rather than the fact of his confinement and his remedy is under civil rights laws . . . .'" <u>Kamara</u>, 2 F.Supp.2d at 89 (quoting <u>Graham v. Broglin</u>, 922 F.2d 379, 381 (7th Cir. 1991)). Thus, "a claim of inadequate medical treatment while in legal custody is ordinarily brought as a civil rights suit for damages or injunctive relief . . . on a <u>Bivens</u> theory where the defendants are federal actors." <u>Id</u>. (internal citation omitted).

The petitioner's request that he be transferred to home confinement alter this conclusion. <u>See id</u>. ("That Kamara's petition seeks the relief of a transfer to another facility does not transform what is at heart a conditions-of-confinement basis for his constitutional challenge."). This Court therefore should dismiss petitioner's first claim for relief in which seeks home confinement.

One court in this district has recently held that, in such circumstances, courts should treat the habeas petition as if it were filed as a civil rights action in lieu of outright dismissal. <u>See Kane</u>, 319 F.Supp.2d at 215-17. In <u>Kamara</u>, by contrast, the court dismissed a habeas petition involving a conditions-of-confinement claim, but did so without prejudice to the filing of a due process or Eighth Amendment claim of deliberate indifference to medical needs. <u>See</u> 2 F.Supp.2d at 89. The Respondent submits that the <u>Kamara</u> approach is the better one. Requiring Petitioner to file a new

action in which he specifically alleges a due process or Eighth Amendment claim of deliberate indifference to medical needs -- which, as demonstrated *infra* in Part B.3, he has not done in the instant petition -- puts both Respondent and this Court on notice as to the precise claims that are being made and the precise actions or omissions of which Petitioner complains.[3]

### 2. To the Extent Petitioner's Claim Is Construed as Seeking Relief Under Bivens, the Claim Must Be Dismissed For Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).[4] This statute forecloses any Bivens claim based on inadequate medical care. See Porter v. Nussle, 534 U.S. 516, 524 (2002) ("[F]ederal prisoners suing under Bivens must first

---

[3] In addition, a Bivens claim is properly made only against a federal official in his individual capacity, and service of process must be made on the individual as well as on the government. Fed. R. Civ. P. 4(i)(2)(B). These features of a Bivens action would seem to preclude the sua sponte conversion of a habeas case into a Bivens action.

[4] The decision in Monahan v. Winn, 276 F.Supp.2d 196, 204 (D. Mass. 2003), which holds that the PLRA's exhaustion requirement does not apply to habeas petitions under § 2241, is not to the contrary, as that case did not involve the applicability of the PLRA's exhaustion requirement in the context of a Bivens claim. Moreover, as explained above, even under § 2241, there remains a judicially-created exhaustion requirement. See Rogers v. United States, 180 F.3d 349, 357 (1st Cir. 1999).

exhaust inmate grievance procedures just as state prisoners must exhaust

administrative processes prior to instituting a § 1983 suit."). Notably, the PLRA's

exhaustion requirement has no "futility" exception." See Booth v. Churner, 532 U.S.

731, 741 n.6 (2001) ("[W]e will not read futility or other exceptions into statutory

exhaustion requirements where Congress has provided otherwise.").

### 3.    Petitioner Does Not Allege the Deprivation of Federal Statutory or Constitutional Rights

In Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics, 403 U.S. 388

(1971), the Supreme Court recognized a damages action against individuals acting under

color of federal law who violate a claimant's federal statutory or constitutional rights. A

claimant may also seek injunctive relief via a Bivens action. See Kane, 319 F.Supp.2d at

213. At an irreducible minimum, however, a claimant must allege the deprivation of a

federal statutory or constitutional right. See Heinrich ex rel. Heinrich v. Sweet, 62

F.Supp.2d 282, 312 (D. Mass. 1999) (dismissal appropriate in Bivens action if, inter alia,

the complaint fails to allege a violation of a statutory or constitutional right).

Petitioner has not alleged the deprivation of a federal statutory or constitutional

right in his Petition. He does not allege that the treatment provided to him by the BOP

is so deficient as to violate his due process or Eighth Amendment rights. To be sure,

Petitioner does allege that "Devens refused and continue to refuse drugs and their

administration of same which were used successfully before my incarceration, [and

-17-

that] Devens has denied me a level of care needed on a daily basis while making me endure a constant level of pain." Petition at 5. But this assertion, even if taken as true, does not suffice to make out a claim of constitutional magnitude. The Petition simply does not allege facts which, if taken as true, would indicate deliberate indifference to serious medical needs. See Miranda v. Munoz, 770 F.2d 255, 259 (1st Cir.1985) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)); and see Dias v. Vose, 865 F. Supp. 53, 57 (D. Mass. 1994) ("the right under Eighth Amendment 'to be free from cruel and unusual punishment does not include the right to treatment of one's choice.'") (quoting Layne v. Vinzant, 657 F.2d 468, 473 (1st Cir. 1981).

In any event, the Declaration of Dr. Howard demonstrates that there has been no indifference to Petitioner's medical needs. The Petitioner has been seen multiple times by FMC Devens staff health care professionals. He is receiving several types of pain medications, and he is being monitored daily for his diabetes with adjustments as clinically indicated. Id. Accordingly, even were this Court to treat Petitioner's claim for relief as a Bivens claim, it must be dismissed for failure to allege or demonstrate the deprivation of a federal statutory or constitutional right.

-18-

## CONCLUSION

For the foregoing reasons, the Petition for a writ of habeas corpus should be

dismissed.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:   /s/ George B. Henderson, II
George B. Henderson, II
Assistant U.S. Attorney

John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3272

Dated: September 26, 2005

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the pro se Petitioner on September 26, 2005, by regular mail, postage prepaid, addressed to: Robert McCaffery, Reg. # 57977-066, FMC Devens, P.O. Box 880, Ayer, MA 01432.

George B. Henderson, II
George B. Henderson, II

-19-

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

ROBERT M. McCAFFERY,          )

                                 )      Civil Action No. 05-40146-RWZ

         Pro se Petitioner,     )

                                 )

  v.                           )

                                 )

DAVID L. WINN,             )

                                 )

         Respondent.       )

## EXHIBITS IN SUPPORT OF RESPONSE TO
## PETITION FOR HABEAS CORPUS AND MOTION TO DISMISS

| Exhibit | Description |
|---|---|
| 1 | Docket Report, <u>USA v. Robert McCaffery</u>, United States District Court, Eastern District of Pennsylvania (Philadelphia), Criminal Docket for Case #: 2:04-cr-00698-PD-ALL |
| 2 | Docket #20 (E.D. Pa.), Sentencing Memorandum by Robert M. McCaffery (5/16/2005) |
| 3 | Declaration of Stephanie Scannell, with attachments |
| 4 | Declaration of Sandra L. Howard, M.D. |

**Exhibit 1**

# United States District Court
## Eastern District of Pennsylvania (Philadelphia)
### CRIMINAL DOCKET FOR CASE #: 2:04-cr-00698-PD-ALL

Case title: USA v. MCCAFFERY            Date Filed: 10/28/2004

Assigned to: HONORABLE PAUL S. DIAMOND

**Defendant**

**ROBERT M. MCCAFFERY** (1)
*TERMINATED: 05/18/2005*

represented by   **MICHAEL J. MALLOY**
10 VETERANS SQ
MEDIA, PA 19063
610-565-9145
Fax: 610-565-1602
Email: burrcat@msn.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**ELIZABETH T. HEY**
FEDERAL DEFENDERS
SUITE 540 WEST
CURTIS CENTER
INDEPENDENCE SQUARE WEST
PHILADELPHIA, PA 19106
215-928-1100
Email: elizabeth_hey@fd.org
*TERMINATED: 02/01/2005*
*Designation: Public Defender or Community Defender Appointment*

**Pending Counts**

18:157(3) BANKRUPTCY FRAUD (1)

**Disposition**

IMPRISONMENT 15 MONTHS, SUPERVISED RELEASE 3 YEARS, RESTITUTION $7,711.30, FINE $2,000.00, SPECIAL ASSESSMENT $100.00

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**

None

**Disposition**

**Highest Offense Level (Terminated)**

None

**Complaints**                                          **Disposition**

None

**Plaintiff**

USA                              represented by   **M. TAYLOR ASPINWALL**
                                                  UNITED STATES ATTORNEY'S
                                                  OFFICE
                                                  615 CHESTNUT ST
                                                  SUITE 1250
                                                  PHILADELPHIA, PA 19106
                                                  215-861-8264
                                                  Fax: 215-861-8609
                                                  Email: taylor.aspinwall@usdoj.gov
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/28/2004 | 1 | INFORMATION as to ROBERT M. MCCAFFERY (1) count(s) 1. (cw, ) (Entered: 10/29/2004) |
| 11/03/2004 | 2 | NOTICE OF HEARING as to ROBERT M. MCCAFFERY Arraignment set for 11/17/2004 10:00 AM in COURTROOM before HONORABLE PAUL S. DIAMOND. (am, ) (Entered: 11/03/2004) |
| 11/03/2004 | 3 | NOTICE OF ATTORNEY APPEARANCE ELIZABETH T. HEY appearing for ROBERT M. MCCAFFERY *Certificate of Service* (HEY, ELIZABETH) (Entered: 11/03/2004) |
| 11/15/2004 | 4 | Plea Memorandum by USA , *CERTIFICATE OF SERVICE* as to ROBERT M. MCCAFFERY (ASPINWALL, M.) (Entered: 11/15/2004) |
| 11/16/2004 | 5 | NOTICE OF HEARING as to ROBERT M. MCCAFFERY Arraignment set for 11/24/2004 10:00 AM in COURTROOM before HONORABLE PAUL S. DIAMOND. (am, ) (Entered: 11/16/2004) |
| 11/24/2004 | 6 | NOTICE OF HEARING as to ROBERT M. MCCAFFERY Sentencing set for 2/28/2005 11:00 AM in COURTROOM before HONORABLE PAUL S. DIAMOND. (am, ) (Entered: 11/24/2004) |
| 11/24/2004 | 7 | Minute Entryfor proceedings held before Judge PAUL S. DIAMOND Arraignment as to ROBERT M. MCCAFFERY (1) Count 1 held on 11/24/04. Plea entered as to ROBERT M. MCCAFFERY (1) Guilty Count 1. Sentencing set for 2/28/05 at 11:00 a.m. PSI Ordered. Bail set at $50,000.00 O/R with conditions. Order to follow. Court Reporter ESR. (ke) (Entered: 11/24/2004) |

| | | |
|---|---|---|
| 11/24/2004 | 8 | WAIVER OF INDICTMENT AS TO ROBERT M. MCCAFFERY. (ke) (Entered: 11/24/2004) |
| 11/24/2004 | 9 | Abstract of Order for Presentence Investigation as to ROBERT M. MCCAFFERY. (ke) (Entered: 11/24/2004) |
| 11/24/2004 | | O/R Bond Entered as to ROBERT M. MCCAFFERY in amount of $50,000.00 WITH CONDITIONS. (ke) (Entered: 11/24/2004) |
| 11/29/2004 | 10 | ORDER SETTING CONDITIONS OF RELEASE AS TO ROBERT M. MCCAFFERY THE COURT IMPOSES BAIL IN THE AMOUNT OF $50,000.00 O/R WITH THE FOLLOWING CONDITIONS: DEFT. SHALL REPORT AS DIRECTED TO U.S. PRETRIAL SERVICES, ETC . Signed by Judge PAUL S. DIAMOND on 11/29/04.11/29/04 Entered and Copies Mailed, E-Mailed BY CHAMBERS. (ke) (Entered: 11/29/2004) |
| 02/01/2005 | 11 | NOTICE OF ATTORNEY APPEARANCE MICHAEL J. MALLOY appearing for ROBERT M. MCCAFFERY (MALLOY, MICHAEL) (Entered: 02/01/2005) |
| 02/07/2005 | 12 | MOTION to Permit *Withdrawal of Appearance, Order, Certificate of Service* by ROBERT M. MCCAFFERY. (HEY, ELIZABETH) (Entered: 02/07/2005) |
| 02/22/2005 | 13 | First MOTION to Continue *Sentencing* by ROBERT M. MCCAFFERY. (MALLOY, MICHAEL) (Entered: 02/22/2005) |
| 02/23/2005 | 14 | ORDER AS TO ROBERT M. MCCAFFERY RE: 12 MOTION TO PERMIT WITHDRAWAL OF APPEARANCE OF DEFENDER ASSOCIATION, THAT UPON THE ENTRY OF MICHAEL J. MALLOY, ESQ., THE DEFENDER ASSOCIATION IS PERMITTED TO WITHDRAW AS COUNSEL TO MR. MCCAFFERY. . Signed by Judge PAUL S. DIAMOND on 2/23/05.2/23/05 Entered and Copies Mailed BY CHAMBERS. (ke) (Entered: 02/23/2005) |
| 02/23/2005 | 15 | ORDER GRANTING 13 MOTION TO CONTINUE SENTENCING FILED BY ROBERT M. MCCAFFERY . Signed by Judge PAUL S. DIAMOND on 2/22/05.2/23/05 ENTERED AND COPIES MAILED. (ke) (Entered: 02/23/2005) |
| 03/18/2005 | 16 | NOTICE OF HEARING as to ROBERT M. MCCAFFERY Sentencing set for 4/20/2005 09:30 AM in COURTROOM before HONORABLE PAUL S. DIAMOND. (am, ) (Entered: 03/18/2005) |
| 04/12/2005 | 17 | NOTICE OF Sentencing as to ROBERT M. MCCAFFERY Sentencing set for 4/20/2005 02:00 PM in a COURTROOM to be determined before the HONORABLE PAUL S. DIAMOND. (jps, ) (Entered: 04/12/2005) |
| 04/25/2005 | 18 | NOTICE OF HEARING as to ROBERT M. MCCAFFERY Sentencing set for 5/17/2005 12:00 PM in a COURTROOM to be determined before the HONORABLE PAUL S. DIAMOND. (jps, ) (Entered: 04/25/2005) |
| 05/13/2005 | 19 | SENTENCING MEMORANDUM CERTIFICATE OF SERVICE by |

| | | |
|---|---|---|
| | | USA as to ROBERT M. MCCAFFERY (Attachments: # 1 # 2 # 3) (ASPINWALL, M.) (Entered: 05/13/2005) |
| 05/16/2005 | 20 | SENTENCING MEMORANDUM by ROBERT M. MCCAFFERY (MALLOY, MICHAEL) (Entered: 05/16/2005) |
| 05/17/2005 | 21 | Minute Entryfor proceedings held before Judge PAUL S. DIAMOND Sentencing held on 5/17/05 for ROBERT M. MCCAFFERY (1), Count(s) 1, IMPRISONMENT 15 MONTHS, SUPERVISED RELEASE 3 YEARS, RESTITUTION $7,711.30, FINE $2,000.00, SPECIAL ASSESSMENT $100.00. DEFT. SHALL SELF SURRENDER TO THE U.S. MARSHAL ON 6/10/05.Court Reporter ESR.(ke) (Entered: 05/18/2005) |
| 05/17/2005 | 22 | IT IS ORDERED THAT THE EXECUTION OF PRISON SENTENCE FOR ROBERT M. MCCAFFERY IS SUSPENDED UNTIL 6/10/05, AT WHICH TIME DEFENDANT IS DIRECTED TO REPORT TO THE U.S. MARSHALS NO LATER THAN 12:00 PM . Signed by Judge PAUL S. DIAMOND on 5/17/05.6/10/05 Entered. (ke) (Entered: 05/18/2005) |
| 05/18/2005 | 23 | JUDGMENT AS TO ROBERT M. MCCAFFERY (1), Count(s) 1, IMPRISONMENT 15 MONTHS, SUPERVISED RELEASE 3 YEARS, RESTITUTION $7,711.30, FINE $2,000.00, SPECIAL ASSESSMENT $100.00. Signed by Judge PAUL S. DIAMOND on 5/17/05.5/18/05 Entered and Copies Mailed BY CHAMBERS. (ke) (Entered: 05/18/2005) |
| 05/31/2005 | 24 | NOTICE OF APPEAL by ROBERT M. MCCAFFERY re: Judgment, Cert. of Service. (MALLOY, MICHAEL) Modified on 6/1/2005 (cmc, ). (Entered: 05/31/2005) |
| 06/01/2005 | 25 | Clerk's Notice to USCA re 24 Notice of Appeal - Final Judgment. (ke) (Entered: 06/01/2005) |
| 06/01/2005 | | USCA Appeal Fees received $255.00, receipt number 400 917546 as to ROBERT M. MCCAFFERY re 24 Notice of Appeal - Final Judgment. (ke) (Entered: 06/01/2005) |
| 06/10/2005 | 26 | USCA Case Number 05-2793 as to ROBERT M. MCCAFFERY for 24 Notice of Appeal - Final Judgment filed by ROBERT M. MCCAFFERY. (ke) (Entered: 06/10/2005) |
| 06/14/2005 | 27 | Praecipe to Withdraw *Appeal* by ROBERT M. MCCAFFERY. (MALLOY, MICHAEL) Modified on 6/15/2005 (cmc) (Entered: 06/14/2005) |
| 09/01/2005 | 28 | ORDER of USCA (certified copy) as to ROBERT M. MCCAFFERY re 24 Notice of Appeal - Final Judgment. IT IS ORDERED BY THE USCA THAT IN ACCORDANCE WITH THE AGREEMENT OF THE PARTIES IN THE ABOVE CASE, IT IS ENTERED DISMISSED BY THE CLERK UNDER THE AUTHORITY CONFERRED UPON HER BY RULE 42(b), FED.R.APP.P. (ke) (Entered: 09/01/2005) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 09/19/2005 12:23:06 | | | |
| **PACER Login:** | us0598 | **Client Code:** | cv |
| **Description:** | Docket Report | **Search Criteria:** | 2:04-cr-00698-PD |
| **Billable Pages:** | 3 | **Cost:** | 0.24 |

**Exhibit 2**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA


vs.                          Case No. 2:04-CR-00698


ROBERT M. MCCAFFERY
        Defendant

### SENTENCING MEMORANDUM ON BEHALF OF DEFENDANT


The defendant, Robert McCaffery plead guilty before this Court to one count charging him with bankruptcy, fraud in violation of Title 18 U.S.C. §157 (3). Mr. McCaffery was charged and plead guilty to falsely representing that he had filed bankruptcy petitions when none were pending and that he provided fraudulent checks as payment in an effort to delay the repossession of an automobile and that he forged a signature of a bankruptcy Judge on a letter to the car dealer relating the repossession of the vehicle.


Probation has issued a pre-sentence report determining that Mr. McCaffery's base offense level is 6. They further determined he was to receive a 4 level enhancement for loss pursuant to§ 2B1.1()(1)(C) and a 2 level enhancement on the grounds that he misrepresented or participated in fraudulent activity during the course of a bankruptcy proceeding pursuant to §2B1.1(b)(8)(B). Mr. McCaffery does not dispute th findings of the pre-sentencing report as it relates to the sentencing guidelines.


In the United States vs. Booker, 125 S.C.738(2005), the Supreme Court determined that the sentencing guidelines were effectively advisory at 757. The government and the probation

office correctly note Mr. McCaffery's prior involvement in issuance of bad checks in Chester County, Pennsylvania for which he remains on and under Court supervision. Omitted from government's Sentencing Memorandum, it is a fact that Mr. McCaffery has fully complied with all the terms and conditions of his probation having last appeared before President Judge Riley on February 1, 2005 for a violation of probation.. On the recommendation of his Probation Officer, Kristen Brown, that Mr. McCaffery exhibited excellent behavior while under her supervision he remains on probation. There remains an outstanding restitution in that matter of $4,474.38.

Mr. McCaffery's decisions in the past certainly have been inappropriate and ill-advised even though they appeared, to Mr. McCaffery, to be well reasoned. Mr. McCaffery attempted to improperly and illegally juggle his finances in order to maintain those assets and/or life style that he had accumulated up until 1999. He recognizes that by his actions he, in fact, created a greater financial burden on himself and his family and has caused both he and his family to lose all of the assets and the personal reputation that he so incorrectly attempted to retain.

Mr. McCaffery has previously submitted a report of Dr. Perry A. Berman, a forensic psychiatrist, who in addition to performing a psychiatric evaluation of Mr. McCaffery, outlines Mr. McCaffery's present medical illness. As indicated, his illnesses began around 2000. Mr. McCaffery began suffering from what was eventually diagnosed as chronic pancreatis, in 1980. During this entire time, he continued to work but also during this time period, his financial circumstances began to deteriorate as set forth in the Pre-Sentence report. He received numerous medical treatments through the 1980's and 1990's eventually being a regular user of Percocet for the pain relief for what was originally believed to be a gallbladder disease. After two decades of medical treatment in 2003, his body in essence began to shut down where he was no longer able to digest food. He suffered malnutrition, diarrhea, albuminuria and even hallucinations. He eventually received a pancreatic transplant, a pancreatic bypass and a spinal cord stimulator implant for pain. He also has and continues to suffer from diabetes. He is presently taking medications of Neurontin, Lasix, Humalog, Percocet (three or four per day), Effexor, Nexxium, Pancreasan Bentyl.

Mr. McCaffery would respectfully suggest to this Court that there are sufficient justifiable reasons to sentence Mr. McCaffery outside the sentencing guidelines range. These reasons being first and foremost, Mr. McCaffery's longstanding medical status including the present medications, his past history on probation with the Court of Common Pleas of Chester County, his recognition of his guilt and the accompanying remorse together with all other factors mentioned in the Pre-Sentence Report, Dr. Berman's report and in this Memorandum.

Mr. McCaffery has suffered significant financial, emotional and medical consequences for his criminal behavior. He is a living walking deterrent to others as to the true penalty one pays for such actions. A sentence of incarceration is only justifiable on the basis of punishment and punishment alone for the sake of remaining within the guidelines. Mr. McCaffery's punishment, while in prison, due to his present medical status, however, will be a far greater punishment. A more justifiable and reasonable punishment is one that imposes lengthy supervision with stringent restrictions on his everyday life. as an example to others

Respectfully submitted,

_____

Michael J. Malloy, Esquire
Identification No.: 24446
10 Veterans Square
Media, PA 19063
(610) 565-9145
(610) 565-1602 - fax

**Exhibit 3**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ROBERT MCCAFFERY | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ. Action No. 05-CV-40146 |
| | ) | |
| DAVID L. WINN | ) | |
| Respondent. | ) | |
| | ) | |

DECLARATION OF STEPHANIE SCANNELL, PARALEGAL SPECIALIST

I, Stephanie Scannell, hereby declare and state as follows:

1.    I am currently employed by the Federal Bureau of Prisons (BOP) of the United States Department of Justice as a Paralegal Specialist at the Consolidated Legal Center located at the Federal Medical Center (FMC) in Devens, Massachusetts. I have been employed at this position since approximately March 9, 2003, and have been with the BOP since October 6, 2002.

2.    In order to perform my official duties as Paralegal Specialist, I have access to numerous records regarding prisoners maintained in the ordinary course of business at FMC Devens. This information includes documentary records and computerized records maintained on SENTRY, the Bureau of Prisons computerized data base.

3.    I have access to the various databases and files concerning administrative remedy claims filed pursuant to the Administrative Remedy Program, which are maintained by the Bureau of Prisons in the ordinary course of business. In particular, I have access to SENTRY, which maintains a record of all of the administrative remedies filed by an inmate, the dates thereof, and the dispositions. These records reflect every administrative remedy claim filed by an inmate in the Bureau of Prisons, while housed in any federal institution of the Bureau of Prisons.

4.     In order to exhaust all process under the administrative remedy procedure for inmates, an inmate must first attempt to informally resolve the dispute with institution staff.  If informal resolution efforts fail, the inmate may raise his or her complaint to the Warden of the institution in which he or she is confined, within 20 calendar days following the date from which the basis of the complaint occurred.  If the Warden denies the Request for Administrative Remedy, the inmate may file an appeal with the Regional Director within 20 calendar days of the date of the Warden's response. If the Regional Director denies the appeal, the inmate may appeal that decision to the General Counsel of the Federal Bureau of Prisons within 30 calendar days from the date of the Regional Director's response.  The administrative remedy process is not considered to be "exhausted" until an inmate's final appeal is denied by the Bureau of Prisons General Counsel.

5.     On September 20, 2005, I ran a SENTRY search to determine if inmate Robert McCaffery, Reg. No. 57977-066, had filed any Administrative Remedies relevant to the allegations in this Petition.  Review of his Administrative Remedy Record revealed that inmate Lockovich has not filed any requests for administrative remedy at any time during his incarceration.  A true and accurate copy of the Administrative Remedy Generalized Retrieval for inmate Robert McCaffery, Reg. No. 57977-066, is attached as **Document 1b**.

6.     Attached hereto please find true and accurate copies of the following documents:

   a.     Public Information Data for inmate Robert McCaffery, Reg. No. 57977-066, dated September 19, 2005;
   b.     Administrative Remedy Generalized Retrieval for inmate Robert McCaffery, Reg. No. 57977-066, dated September 20, 2005.


I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge.

Executed this 22ⁿᵈ day of September, 2005

Stephanie Scannell
Paralegal Specialist
FMC Devens

```
   DEVAA          *        PUBLIC INFORMATION        *      09-19-2005
PAGE 001          *           INMATE DATA            *      12:12:13
                               AS OF 09-19-2005

REGNO..: 57977-066 NAME: MCCAFFERY, ROBERT

                    RESP OF: DEV / DESIGNATED, AT ASSIGNED FACIL
                    PHONE..: 978-796-1000    FAX: 978-796-1118
                                             RACE/SEX...: WHITE / MALE
FBI NUMBER.: 917470FB5                       DOB/AGE....: 09-04-1950 / 55
PROJ REL MT: GOOD CONDUCT TIME RELEASE       PAR ELIG DT: N/A
PROJ REL DT: 07-22-2006                      PAR HEAR DT:
--------------------------- ADMIT/RELEASE HISTORY ---------------------------
FCL   ASSIGNMENT DESCRIPTION                 START DATE/TIME STOP  DATE/TIME
DEV   A-DES      DESIGNATED, AT ASSIGNED FACIL 06-21-2005 1142 CURRENT
1-Z   RELEASE    RELEASED FROM IN-TRANSIT FACL 06-21-2005 1142 06-21-2005 1142
1-Z   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 05-20-2005 1458 06-21-2005 1142
CPA   ADMIN REL  ADMINISTRATIVE RELEASE        05-20-2005 1458 05-20-2005 1458
CPA   A-ADMIN    ADMINISTRATIVE ADMISSION      05-20-2005 1456 05-20-2005 1458




G0002       MORE PAGES TO FOLLOW . . .
```

1a

```
   DEVAA          *           PUBLIC INFORMATION        *      09-19-2005
   PAGE 002       *              INMATE DATA            *      12:12:13
                                AS OF 09-19-2005

   REGNO..: 57977-066 NAME: MCCAFFERY, ROBERT

                     RESP OF: DEV / DESIGNATED, AT ASSIGNED FACIL
                     PHONE..: 978-796-1000    FAX: 978-796-1118
   PRE-RELEASE PREPARATION DATE: 06-14-2006

   THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
   THE INMATE IS PROJECTED FOR RELEASE:  07-22-2006 VIA GCT REL

   ---------------------CURRENT JUDGMENT/WARRANT NO: 010 ------------------------

   COURT OF JURISDICTION...........: PENNSYLVANIA, EASTERN DISTRICT
   DOCKET NUMBER...................: 04-698
   JUDGE...........................: DIAMOND
   DATE SENTENCED/PROBATION IMPOSED: 05-17-2005
   DATE COMMITTED..................: 06-21-2005
   HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
   PROBATION IMPOSED...............: NO

                     FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
   NON-COMMITTED.: $100.00         $00.00         $2,000.00     $00.00

   RESTITUTION...:  PROPERTY: NO  SERVICES:  NO       AMOUNT:  $7,711.30

   ------------------------CURRENT OBLIGATION NO: 010 ---------------------------
   OFFENSE CODE....:  153
   OFF/CHG: T18:157(3)-BANKRUPTCY FRAUD

    SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
    SENTENCE IMPOSED/TIME TO SERVE.:   15 MONTHS
    TERM OF SUPERVISION............:    3 YEARS
    DATE OF OFFENSE................: 08-18-2003

   G0002       MORE PAGES TO FOLLOW . . .
```

```
   DEVAA        *        PUBLIC INFORMATION        *      09-19-2005
PAGE 003 OF 003 *           INMATE DATA           *      12:12:13
                          AS OF 09-19-2005

REGNO..: 57977-066 NAME: MCCAFFERY, ROBERT

                  RESP OF: DEV / DESIGNATED, AT ASSIGNED FACIL
                  PHONE..: 978-796-1000    FAX: 978-796-1118
------------------------CURRENT COMPUTATION NO: 010 --------------------------

COMPUTATION 010 WAS LAST UPDATED ON 07-13-2005 AT DEV AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

DATE COMPUTATION BEGAN..........: 06-21-2005
TOTAL TERM IN EFFECT............:    15 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:     1 YEARS      3 MONTHS
EARLIEST DATE OF OFFENSE........: 08-18-2003

JAIL CREDIT.....................:  FROM DATE     THRU DATE
                                   05-17-2005    05-17-2005

TOTAL PRIOR CREDIT TIME.........: 1
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 59
TOTAL GCT EARNED................: 0
STATUTORY RELEASE DATE PROJECTED: 07-22-2006
SIX MONTH /10% DATE.............: N/A
EXPIRATION FULL TERM DATE.......: 09-19-2006


PROJECTED SATISFACTION DATE.....: 07-22-2006
PROJECTED SATISFACTION METHOD...: GCT REL



S0055      NO PRIOR SENTENCE DATA EXISTS FOR THIS INMATE
```

```
      FUNCTION: LST SCOPE: REG   EQ 57977-066   OUTPUT FORMAT: FULL
------LIMITED TO SUBMISSIONS WHICH MATCH ALL LIMITATIONS KEYED BELOW----------
DT RCV: FROM _____ THRU _____ DT STS: FROM _____ THRU _____
DT STS: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT RDU
DT TDU: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT TRT
STS/REAS: _____ _____ _____ _____ _____ _____ _____ _____ _____
SUBJECTS: _____ _____ _____ ____ ____ _____ _____ _____ _____
EXTENDED: _ REMEDY LEVEL: _ _              RECEIPT: _ _ _ "OR" EXTENSION: _ _ _
RCV  OFC : EQ ____     ____     ____     ____     ____     ____
TRACK: DEPT: _____ _____ _____ _____ _____ _____
      PERSON: ____     ____     ____     ____     ____     ____
        TYPE: ____     ____     ____     ____     ____     ____
EVNT FACL: EQ ____     ____     ____     ____     ____     ____
RCV FACL.: EQ ____     ____     ____     ____     ____     ____
RCV UN/LC: EQ _____ _____ _____ _____ _____ _____
RCV QTR..: EQ _____ _____ _____ _____ _____ _____
ORIG FACL: EQ ____     ____     ____     ____     ____     ____
ORG UN/LC: EQ _____ _____ _____ _____ _____ _____
ORIG QTR.: EQ _____ _____ _____ _____ _____ _____


G5152      NO REMEDY DATA EXISTS FOR THIS INMATE
```

1b

**Exhibit 4**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ROBERT MCCAFFERY,<br>        PETITIONER, | )<br>)<br>) | |
| | ) | |
| v. | ) | Civil Action No. 05-CV-40146 |
| | ) | |
| DAVID L. WINN,<br>        RESPONDENT. | )<br>)<br>) | |
| | ) | |

## DECLARATION OF SANDRA L. HOWARD, M.D.

I, SANDRA L. HOWARD, hereby declare and state as follows:

1.      I am employed by the United States Department of Justice, Federal Bureau of Prisons as the Clinical Director, at the Federal Medical Center (FMC), Devens, Massachusetts. I have been employed in this position since February 25, 2001. I have been employed with the Federal Bureau of Prisons since January 22, 1995.

2.      As the Clinical Director, I oversee the medical care provided to inmates incarcerated at FMC Devens. In this capacity, I have access to records maintained in the ordinary course of business at FMC Devens. I am familiar with inmate Robert McCaffery, Register Number 57977-066, the petitioner in the above-captioned civil action. I have been advised that inmate McCaffrey has filed a § 2241 Petition alleging that he is receiving inadequate medical care at FMC Devens and has been refused certain medications. Petitioner is therefore requesting home confinement in order to receive treatment from "doctors who have cared for me."

3.      The factual information set forth in this declaration is obtained from (and summarizes) relevant pages of inmate McCaffery's medical record.

4.      Inmate McCaffery is a 55 year old male who arrived at FMC Devens on June 21, 2005, at which time he had an initial intake evaluation. He arrived with a history of pancreatitis, diabetes, arthritis, and depression, and had undergone a pancreatic bypass in 1980 and a pancreatic autotransplant in 1982. Upon his arrival, it was reported that he was taking the following medications: equaline, zelnorm, gabapentin, percocet, lasix, panzestyme, effexor, nexium, and lantus insulin.

5.   The BOP has an evidence-based medication formulary which is designed so that the
     medications listed in it cover all of the medical conditions that are treated in the Bureau of
     Prisons. An evidenced based formulary is a list of approved medications approved
     pursuant to an annual review by a committee consisting of medical doctors and
     pharmacists from both the Central Office and the field from the Bureau of Prisons. They
     consider medical studies, outcomes, efficacies, costs, current medical references, and
     current FDA approved uses. If a medication is needed that is not on the formulary, a
     mechanism is in place to get non-approved medications for use in the Bureau of Prisons.
     Based upon the BOP formulary, on June 21, 2005, inmate McCaffery's staff physician
     reviewed his medications and made the following medication changes:
          1. Prilosec was substituted for Nexium.
          2. Gabapentin, Zelnorm, and Equaline were discontinued as these medications are
          not part of Bureau Of Prisons formulary. Inmate McCaffery was offered substitute
          formulary medications, but he refused these medications.

6.   Inmate McCaffery was seen by the staff psychiatrist on June 21, 2005, for his use of
     Effexor, an anti-depressant. The staff psychiatrist advised him to continue Effexor.

7.   On June 21, 2005, inmate McCaffery was evaluated by Psychology staff, at which time he
     reported being plagued by suicidal ideation frequently, and "would not rule [the idea of
     committing suicide] out at present." He was placed on suicide watch to ensure his safety
     at that time. While on suicide watch, inmate McCaffery was evaluated by medical staff
     about every six hours. On June 23, 2005, suicide watch was discontinued, as inmate
     McCaffery maintained that he had "no intention of killing [him]self."

8.   On June 24, 2005, inmate McCaffery was seen at a sick call visit for stomach pain.
     Laboratory work was ordered, and it was determined to continue his current treatment
     with percocet pain medication.

9.   Inmate McCaffery was seen by a staff nurse on June 27, 2005, and subsequently seen by a
     mid-level practitioner for a physical on June 29, 2005. He was educated about his
     medication doses, routine, and schedule.

10.  On the same day, June 29, 2005, inmate McCaffery was seen in a chronic care visit by a
     staff physician. At the evaluation, the physician continued inmate McCaffery on percocet,
     1-2 tablets, 2-3 times per day, for chronic pain.

11.  On July 1, 2005, inmate McCaffery had a follow-up exam by a mid-level practitioner. He
     was evaluated, with no acute abdominal findings. He was continued on his current
     medication treatment plan. The mid-level practitioner saw inmate McCaffery later in the
     day, and he reported that the pain had resolved.

12.  On July 23, 2005, inmate McCaffery was seen by a mid-level practitioner due to an elevated glucose level.  After consultation with his team physician, he was treated with extra regular insulin.  In addition, his daily regular insulin therapy was adjusted to correct his blood sugar.

13.  Inmate McCaffery saw the dentist at FMC Devens on July 25, 2005, for tooth decay.  It was recommended that the tooth be extracted.  Inmate McCaffery refused this treatment, despite being advised that possible consequences of refusal were pain, swelling, and facial infection.  He informed the staff dentist that he will see his personal dentist upon release.

14.  On July 27, 2005, inmate McCaffery's staff physician renewed his prescription for percocet, 1-2 tablets, 2-3 times per day, for his chronic pain.

15.  On July 29, 2005, inmate McCaffery was seen by the mid-level practitioner at FMC Devens for pain and a tooth infection.  Because he had refused a tooth extraction, he was prescribed penicillin and told to return to the clinic if he experienced "fever or chills," facial swelling, or a cough.  Also, his insulin was adjusted to treat his glucose levels.

16.  On August 12, 2005, inmate McCaffery had a follow-up exam with his staff physician for adjustment of his insulin and chronic stomach pain.  His medications were renewed, his insulin was increased, and he was educated about his medication and treatment.

17.  On August 22, 2005, inmate McCaffery was seen by his staff physician for his chronic stomach pain and diabetes.  His percocet was continued, 1-2 tablets, twice daily.  In addition, slow release morphine sulfate, which lasts approximately twelve hours, was added as part of his treatment.  Specifically, he was prescribed 15mg slow release morphine sulfate at bedtime, and Tylenol 650mg, four times daily as needed for pain.

18.  On September 12, 2005, inmate McCaffery was seen in the chronic care clinic by his staff physician, at which time he expressed complaints of chronic stomach pain.  Laboratory tests were conducted.  His percocet was renewed, 1-2 tablets in the morning and at noon.  Morphine sulfate slow release was increased to 30mg at bedtime, and his prescription for Tylenol 650mg, four times daily, was renewed.  A follow-up appointment was scheduled in approximately thirty days.

19.    The healthcare mission of the Bureau of Prisons is to provide appropriate and necessary medical, dental and mental health services to inmates by professional staff. All Bureau of Prisons institutions, to include FMC Devens, operate outpatient ambulatory care clinics which are accredited by the Joint Commission on the Accreditation of Healthcare Organizations (JCAHO), the nation's predominate standards-setting and accrediting body in health care. While at FMC Devens, inmate McCaffery has been receiving appropriate medical care. As of today's date, inmate McCaffery is in stable condition, and records indicate that he has been appropriately treated for his various medical conditions. He is currently receiving a multiple level approach to his pain therapy using percocet, morphine, and Tylenol for his chronic pain. Also, he is being monitored daily for his diabetes with adjustments as clinically indicated. He will continue to be followed by medical staff in order to periodically adjust his medications according to clinical indications.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge.

Executed this 22 day of September, 2005.

, Sandra L. Howard, M.D.
Clinical Director
Federal Medical Center
Devens, Massachusetts

Page 4 of 4